# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

12260 GROUP, LLC,

    Plaintiff,

v.                                                                                    Case No: 8:23-cv-1611-CEH-SPF

INDEPENDENT SPECIALTY
INSURANCE COMPANY and
CERTAIN UNDERWRITERS AT
LLOYD'S LONDON, SUBSCRIBING
TO CERTIFICATE NUMBER
B604510568622021,

    Defendants.

_____/

## ORDER

This cause comes before the Court on a motion to compel arbitration of this insurance dispute filed by Defendants Independent Specialty Insurance Company and Certain Underwriters at Lloyd's London, Subscribing to Certificate Number B604510568622021 ("Defendants"). [1] Doc. 8. Plaintiff 12260 Group, LLC, responds in opposition (Doc. 10) and Defendants reply (Doc. 13). Having considered the motion and being fully advised in the premises, the Court will grant Defendants' motion and stay this case pending arbitration.

---

[1] Defendants filed an answer and "counterclaim for declaratory relief and to compel arbitration" prior to the instant motion to compel arbitration. Doc. 7. Their counterclaim asks the Court to compel arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, the same relief sought in the instant Motion. *Id.* at 21. Plaintiff filed a reply to the answer. *See* Doc. 9.

## BACKGROUND

Plaintiff alleges that Defendants have improperly refused to pay out an insurance claim it submitted for hurricane damage to its hotel property. Doc. 1-1 ¶¶ 8, 10, 14–20; Doc. 8 at 2. Thus, Plaintiff filed this suit for breach of contract under Florida law to recover the funds allegedly owed to it. *See* Doc. 1-1. Defendants removed the case to federal court. Doc. 1.

The Parties' insurance contract contains an arbitration provision stating in part that:

> All matters in difference between an insured and the Insurer (hereinafter referred to as "the Parties") in relation to this insurance, including its formation, validity, and the arbitrability of any dispute, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out. This Arbitration Clause applies to all persons or entities claiming that they are entitled to any sums under the policy, including, but not limited to, additional insureds, mortgagees, lender's loss payees, assignees, and/or lienholders.

Doc. 1-6 at 45–46; Doc. 8 at 3.

The agreement further provides that the arbitration tribunal "may not award exemplary, punitive, multiple or other damages of a similar nature." Doc. 1-6 at 46. Arbitration is to occur in New York, applying New York law. *Id.*

Defendants move to compel arbitration of this claim and stay the litigation. Doc. 8. Specifically, they argue that Plaintiff's claims are subject to the policy's mandatory arbitration agreement. *Id.* at 1. Because one of the defendants is a foreign entity, Defendants argue that the arbitration agreement must be enforced under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the

Convention"). *Id.* at 2–8. They claim that all four prerequisites for compelling arbitration under the Convention are satisfied. *Id.* at 9–11. Additionally, Defendants argue that the agreement's delegation clause mandates that all issues regarding the formation and scope of the agreement be heard by the arbitration tribunal (*Id.* at 11–16), and that each of Plaintiff's potential defenses to arbitration are unavailing (*Id.* at 16–22). Thus, they ask the Court to stay this case and compel arbitration. *Id.* at 22–24.

Plaintiff responds with several arguments against arbitration, including that the choice of law provisions in the policy are unenforceable, the arbitration clause is unenforceable, and that Defendants have waived their arbitration rights. *See* Doc. 10. Plaintiff also argues that certain applicable Florida statutory provisions were enacted "for the purpose of regulating the business of insurance" and are thus preserved by the McCarran-Ferguson Act from preemption by the Federal Arbitration Act. *Id.* at 12, 14–18.

Defendants reply that Plaintiff fails to address the application of the Convention (relevant here due to the presence of a foreign insurer) or the policy's broad delegation clause. Doc. 13 at 1–2. They also note that Plaintiff has unsuccessfully made the same arguments in two recent and nearly identical cases in this District. *Id.* at 2.

As described below, the Court finds that all four factors needed to compel arbitration pursuant to the Convention are satisfied, and that Plaintiff fails to show that the agreement is null and void, inoperative or incapable of being performed. As a result, the Court will order the Parties to arbitrate and stay this case.

3

## DISCUSSION

In the context of foreign arbitration agreements, two chapters of Title 9 of the United States Code are relevant: (1) Chapter 1, which contains the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16; and (2) Chapter 2, which contains the Convention Act, 9 U.S.C. §§ 201–208. *Escobar v. Celebration Cruise Operator, Inc.,* 805 F.3d 1279, 1283 (11th Cir. 2015).

The FAA addresses arbitration agreements generally and holds that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a strong federal policy toward resolving disputed arbitrable issues through arbitration; indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or a likely defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-WFJ-JSS, 2019 WL 5887179, at *1 (M.D. Fla. Nov. 12, 2019) (stating that "[a] strong policy exists in favor of resolving disputes by arbitration").

That said, courts "are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 (11th Cir. 2011) (citation and internal quotations omitted). Furthermore, the Supreme Court has recently explained that courts may not "create arbitration-specific variants of federal procedural rules, like

4

those concerning waiver, based on the FAA's policy favoring arbitration." *Morgan v. Sundance, Inc.,* 596 U.S. 411, 417 (2022).

The Convention Act specifically addresses foreign arbitration agreements through its implementation of the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards. 9 U.S.C. § 201. The Convention provides that the United States "shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." New York Convention, art. II, June 10, 1958, 21 U.S.T. 2517. "[U]nder the Convention and Supreme Court and Circuit precedent, there is a strong presumption in favor of freely-negotiated contractual choice-of-law and forum-selection provisions, and this presumption applies with special force in the field of international commerce." *Lindo v. NCL (Bah.), Ltd.,* 652 F.3d 1257, 1275 (11th Cir. 2011). The Convention requires a district court to order arbitration if an international arbitration clause falls within its coverage. *See* 9 U.S.C. § 201; *Bautista v. Star Cruises,* 396 F.3d 1289, 1294 (11th Cir. 2005).

"In deciding a motion to compel arbitration under the [Convention Act], a court conducts a very limited inquiry." *Bautista,* 396 F.3d at 1294. The Eleventh Circuit has established a straightforward framework for this analysis. First, "four jurisdictional prerequisites" must be satisfied to trigger the Convention: (1) an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a

Convention signatory; (3) the agreement arises out of a commercial legal relationship; and (4) one of the parties is not an American citizen. *Northrop & Johnson Yachts Ships, Inc. v. Royal Van Lent Shipyard, B.V.,* 855 F. App'x 468, 472 (11th Cir. 2021).

Plaintiff does not dispute any of these four jurisdictional elements. *See* Doc. 10. The pertinent insurance policy establishes a commercial legal relationship and contains an expansive arbitration clause. The agreement dictates that arbitration is to be seated in the United States, which is a participant to the Convention. And at least one defendant (Lloyd's of London) is a foreign entity. Nothing more is required. *See, e.g., VVG Real Est. Invs. v. Underwriters at Lloyd's, London,* 317 F. Supp. 3d 1199, 1205 (S.D. Fla. 2018).

Once the four jurisdictional factors are satisfied, as here, the district court is required to compel arbitration unless an affirmative defense applies. The only available defenses are provided in the Convention itself—that the arbitration agreement is "null and void, inoperative or incapable of being performed." *Suazo v. NCL (Bahamas), Ltd.,* 822 F.3d 543, 546 (11th Cir. 2016). The "'null and void' clause ... limits the bases upon which an international arbitration agreement may be challenged to standard breach-of-contract defenses." *Bautista,* 396 F.3d at 1302 (noting that the "null and void clause 'must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale.'" (citation omitted)).

Plaintiff attempts to make an argument regarding each of the three categories of affirmative defenses. Doc. 10 at 4 ("Multiple, independent grounds exist at law and equity for the revocation of the mandatory arbitration agreement contained in the Policy, rendering the arbitration agreement null and void, inoperative, or incapable of being performed."). Plaintiff's arguments, addressed in turn below, are unpersuasive. *See Les Bijoux Grp., LLC v. Van Cleef & Arpels, Inc.,* No. 20-CV-80124, 2020 WL 13388310, at *2 (S.D. Fla. Apr. 23, 2020) ("[T]he party opposing arbitration . . . has the burden to prove that an affirmative defense applies.")

**1. Choice of Law Provision**

The Parties' agreement states that arbitration is to proceed in New York using New York law. This is problematic, according to Plaintiff, because "application of New York law . . . result[s] in diminished remedies available to [it]." Doc. 10 at 7. Plaintiff claims that, under New York law, it would lose the right to pursue punitive damages and attorney's fees, which it otherwise could seek under Florida law. *Id.* at 9–10. Plaintiff also claims the choice-of-law provision stems from unequal bargaining power, making it "unreasonable or unjust." *Id.* at 10. Thus, Plaintiff submits that enforcement of the arbitration agreement "would contravene public policy." *Id.* at 5–10. Defendants respond that the choice of law provision is in fact enforceable and that Plaintiff presents no valid affirmative defenses under the Convention or the law of this Circuit. Doc. 8 at 16–17.

Plaintiff's arguments are indeed without merit. The Eleventh Circuit has held that "the broad defenses applicable in the context of domestic arbitration are not

generally available in cases governed by the New York Convention," including challenges to the enforceability of an arbitration agreement on the grounds that it limits available remedies. *Suazo,* 822 F.3d at 547. Similarly, Plaintiff's public policy argument is not a proper basis to avoid arbitration, at least at this "initial arbitration-enforcement stage." *See Les Bijoux Grp., LLC v. Van Cleef & Arpels, Inc.,* No. 20-CV-80124, 2020 WL 13388310, at *4 (S.D. Fla. Apr. 23, 2020).

Simply put, unconscionability is not an affirmative defense under the Convention. *See, e.g., KDH Architecture Inc. v. Certain Underwriters at Lloyd's, London,* No. 19-60307-CIV, 2019 WL 5260266, at *3 (S.D. Fla. July 25, 2019) (rejecting argument that arbitration agreement was unconscionable, and thus unenforceable because it "required the arbitration to take place in New York and to apply New York law"); *see also Lindo v. NCL (Bahamas), Ltd.,* 652 F.3d 1257, 1277–1283 (11th Cir. 2011). Thus, the Court will reject Plaintiff's unconscionability and public policy arguments regarding the agreement's choice of law provision.

**2. Florida Law**

Plaintiff's next argument is similar. Plaintiff claims that Florida law controls enforceability of the arbitration agreement. Doc. 10 at 10–13. It argues that the agreement is void because "[t]he limitations of remedies provisions in paragraphs 4 and 5 . . . violate public policy" in that "they directly undermine specific statutory remedies created by the [Florida] Legislature." *Id.* at 14–15.

These arguments, like Plaintiff's choice of law arguments, are unpersuasive. First, Florida law does not control the question of enforceability in cases governed by

8

the Convention. "The Convention must be enforced according to its terms over all prior inconsistent rules of law." *Goshawk Dedicated v. Portsmouth Settlement Co. I,* 466 F. Supp. 2d 1293, 1304 (N.D. Ga. 2006). And "[t]he limited defenses allowed [under the Convention are] that the agreement is null and void, inoperative, or incapable of being performed." *Cornfeld Grp., LLC v. Certain Underwriters at Lloyd's, London,* No. 21-62510-CIV, 2022 WL 2302123, at *4 (S.D. Fla. June 27, 2022); *see also Lathan v. Carnival Corp.,* No. 08-23002-CIV, 2009 WL 6340059, at *2 (S.D. Fla. Apr. 9, 2009) ("[S]tate-law principles of unconscionability do not fit within the limited scope of defenses allowed by the Convention."). Finally, as already mentioned, public policy concerns are not a viable defense "at the arbitration-enforcement stage." *Suazo,* 822 F.3d at 552. Therefore, these arguments fail.

### 3. Preemption

Plaintiff next asserts a reverse preemption argument. Doc. 10 at 11–13, 16–19. Specifically, it argues that the McCarran-Ferguson Act "prevents federal preemption of state statutes regulating insurance" as relevant to this matter. *Id.* at 17. Thus, it argues, the Convention must yield to the extent it conflicts with Florida's treatment of arbitration agreements in insurance contracts.

This argument fails. The McCarran-Ferguson Act applies only to arbitration agreements within the United States. It has no effect on an international arbitration agreement governed by the Convention. Put simply, "the Convention supersedes the McCarran-Ferguson Act." *Goshawk Dedicated,* 466 F. Supp. 2d at 1304; *see also Lloyds*

*Underwriters v. Netterstrom,* 17 So. 3d 732, 737 (Fla. 1st DCA 2009) ("The Federal Arbitration Act must give way to contrary provisions of state laws regulating the business of insurance but, to the extent that the Act incorporates an agreement the United States made with other nations, it prevails over state laws.").

The Parties' agreement provides insurance coverage issued by a foreign entity to a Florida corporation, thus constituting foreign commerce outside the purview of the McCarran-Ferguson Act. With that being the case, there is no basis to argue that Florida law (through the McCarran-Ferguson Act) prohibits the Convention from controlling this dispute. *See DAK Prop. Holdings, Inc. v. Indep. Specialty Ins. Co.,* No. 2:23-CV-497-SPC-KCD, 2023 WL 5748473, at *3 (M.D. Fla. Aug. 2, 2023), *objections overruled,* 2023 WL 6519552 (Sept. 14, 2023); *see also Antillean Marine Shipping Corp. v. Through Transp. Mut. Ins., Ltd.,* No. 02-22196-CIV, 2002 WL 32075793, at *3 (S.D. Fla. Oct. 31, 2002).

Plaintiff's argument based on *Stephens v. American International Ins. Co.,* 66 F.3d 41 (2d Cir. 1995) [2] fails as well. *Stephens*, an out-of-circuit case, held that the Convention is not self-executing and therefore does not supersede the McCarran-Ferguson Act. 66 F.3d at 45. At least one persuasive in-circuit opinion has explicitly repudiated *Stephens*. *See Goshawk Dedicated,* 466 F. Supp. 2d at 1305 n.9. Others disagree with *Stephens* without addressing the opinion. *See, e.g., Antillean Marine Shipping Corp.*, 2002 WL 32075793, at *3 ("[T]he McCarran-Ferguson Act does not

---

[2] *See* Doc. 10 at 12–13.

apply to international insurance contracts made under the Convention[.]"); *Lloyds Underwriters,* 17 So. 3d at 737 (holding that "the McCarran–Ferguson Act applies only to arbitration agreements within the United States and that it has no effect on an international arbitration agreement that is governed by the Convention.")

Plaintiff also argues repeatedly that the arbitration agreement is unenforceable, often in a conclusory fashion and without citation to relevant authority. Doc. 10 at 5–8, 10–14, 24. As to these miscellaneous enforceability arguments, Defendants point out that Plaintiff fails to address the Policy's broad delegation clause, which requires that all matters in difference be referred to arbitration. Doc. 13 at 5–6. Furthermore, Defendants argue that Supreme Court and Eleventh Circuit precedent holds—without exception—that a delegation clause such as the one at issue renders threshold issues of arbitrability, including the agreement's scope, to be the exclusive province of the arbitration panel. *Id.*

The court agrees with Defendants. The Supreme Court and the Eleventh Circuit have held that a delegation clause such as the one at issue here places within the exclusive province of the arbitration panel threshold issues of arbitrability, including the agreement's scope. *Jones v. Waffle House, Inc.,* 866 F.3d 1257, 1264 (11th Cir. 2017) ("Among other things, the parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement.") (citing *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 68–69 (2010)). When "an arbitration agreement contains a delegation provision— committing to the arbitrator the threshold determination of whether the agreement to

arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision." *Parnell v. CashCall, Inc.,* 804 F.3d 1142, 1144 (11th Cir. 2015). "Only if [the Court] determine[s] that the delegation clause itself is invalid or unenforceable may [the Court] review the enforceability of the arbitration as a whole." *Parm v. Nat'l Bank of Cal.,* N.A., 835 F.3d 1331, 1335 (11th Cir. 2016). Finally, Courts have enforced substantially similar delegation clauses as valid and encompassing threshold issues of arbitrability, including the scope of the arbitration provision itself. *Cornfeld Grp., LLC,* 2022 WL 2302123 at *4 ("The clause does not limit arbitration to coverage disputes but to any claim that relates to the parties' insurance relationship.").

Here, the delegation clause states all matters in difference between the Parties (related to the insurance policy) should be referred to arbitration.  Doc. 1-6 at 45–46. There is no basis to invalidate this delegation clause. Therefore, Plaintiff's arguments are due to be rejected and all threshold issues of arbitrability, including the enforceability and scope of the arbitration provision, are to be determined by the arbitration panel.

### 5. Waiver

Plaintiff mentions waiver in several of its lengthy subheadings and cites caselaw on the issue (Doc. 10 at 1, 16, 20–21), but utterly fails to explain how Defendants have waived their right to arbitration in this case or how the authority it cites applies.

Waiver of a contractual right may be explicit if a party makes a specific statement of his intent to waive a right, or it may be implied through conduct when such conduct "make[s] out a clear case." *Air Prod. & Chem., Inc. v. La. Land &*

*Exploration Co.,* 867 F.2d 1376, 1379 (11th Cir. 1989). Under Florida law, a party may waive its contract right "by actively participating in a lawsuit or taking action inconsistent with that right." *Klosters Rederi A/S v. Arison Shipping Co.,* 280 So. 2d 678, 681 (Fla. 1973). This determination is made by evaluating the totality of the circumstances, and "the question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context." *Green Tree Servicing, LLC v. McLeod,* 15 So. 3d 682, 687 (Fla. 2d DCA 2009) (citations and quotations omitted); *see also Raymond James Fin. Services, Inc. v. Saldukas,* 896 So. 2d 707, 711 (Fla. 2005).

Here, Plaintiff provides no coherent argument as to how Defendants have waived their right to arbitration. To the contrary, even in their notice of removal (Doc. 1) and their answer (Doc. 7), Defendants outlined their arguments regarding why this Court should order the parties to arbitrate this matter. Defendants filed the instant Motion to Compel Arbitration shortly after and have not otherwise participated in this case on the merits. Plaintiff also argues in a sentence that Defendants have waived their right to arbitration based on their "failure to notify the Plaintiff of its right to participate in the mediation program" under Florida law. Doc. 10 at 20. However, Plaintiff does not otherwise cite any authority in support of this argument, any evidence in the record, or any other facts that would lead the Court to find that Defendants have waived their right to arbitrate. Therefore, Plaintiff's waiver arguments will be rejected.

### 6. Injunction

Finally, Plaintiff asks the Court to issue a preliminary injunction prohibiting Defendants from "appointing an arbitrator . . . [or] pursuing . . . arbitration in any manner while this lawsuit is pending." Doc. 10 at 22. This relief is warranted, according to Plaintiff, because it has shown "a substantial likelihood of success on the merits [based on] the law and facts as detailed and argued above." *Id.* In other words, an injunction should issue because Plaintiff has proven the arbitration agreement is void and unenforceable.

Injunctive relief is neither available nor appropriate here. First, Plaintiff's request is procedurally deficient. Under the Federal Rules of Civil Procedure and this Court's Local Rules, Plaintiff must submit a motion to obtain a preliminary injunction. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *Id.* 65(a)(2) (contemplating that a plaintiff has submitted a motion for a preliminary injunction); Local Rule 6.01–02 (requiring a plaintiff to request a preliminary injunction through a motion with an attached legal memorandum). Because Plaintiff never moved for a preliminary injunction, its request for preliminary injunctive relief is not before the Court. When a party seeks relief imbedded in a response or reply, as here, "the issue has not been raised properly." *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1222 (11th Cir. 1999).

Moreover, Plaintiff's arguments against the arbitration clause have all been rejected. There is thus no basis to enjoin the arbitration from moving forward.

14

## CONCLUSION

All four factors needed to compel arbitration pursuant to the Convention are satisfied in this case, and Plaintiff has not proven that the agreement is "null and void, inoperative or incapable of being performed." As a result, the Court will grant the motion and compel arbitration.

Having found that arbitration is appropriate, the Court turns to the question of how this case should proceed. Defendants seek a stay of this matter pending binding arbitration. And the Eleventh Circuit has generally held that the proper course is to stay the proceedings rather than dismiss the action. *See Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 699 (11th Cir. 1992) ("The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them. Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."); *see also Klay v. All Defendants,* 389 F.3d 1191, 1203–1204 (11th Cir. 2004) ("For arbitrable issues, the language of Section 3 indicates that the stay is mandatory."). Accordingly, the Court will follow suit and stay the case.

It is thus **ORDERED**:

1. Defendants' Motion to Compel Arbitration (Doc. 8) is **GRANTED.**

2. Plaintiff 12260 Group, LLC, is compelled to arbitrate the claims brought in this suit against Defendants Independent Specialty Insurance Company and Certain

Underwriters at Lloyd's London, Subscribing to Certificate Number B604510568622021.

3. The parties shall file a notice informing the Court that the arbitration has been concluded, or that their dispute has otherwise been resolved, within ten days of either of such events.

4. This case is **STAYED** pending the arbitration of Plaintiff 12260 Group, LLC's Claims against Defendants. The Clerk is **DIRECTED** to administratively close this case.

**DONE** and **ORDERED** in Tampa, Florida on December 6, 2023.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties